## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TAMMY JORDAN | : | CIVIL ACTION |
| 106 Faith Court | : | |
| Mount Laurel, NJ 08054 | : | |
| Plaintiff, | : | NO. |
| -vs- | : | |
|  | : | |
| BOARD OF EDUCATION OF | : | PLAINTIFF REQUESTS |
| MOUNT LAUREL TOWNSHIP | : | A TRIAL BY JURY |
| 330 Mount Laurel Road | : | |
| Mount Laurel, New Jersey 08054 | : | |
| and | : | |
| MOUNT LAUREL BOARD | : | |
| OF EDUCATION | : | |
| 330 Mount Laurel Road | : | |
| Mount Laurel, New Jersey 08054 | : | |
| and | : | |
| LARCHMONT ELEMENTARY SCHOOL | : | |
| 301 Larchmont Boulevard | : | |
| Mt Laurel, New Jersey 08054 | : | |
| and | : | |
| MOUNT LAUREL SCHOOLS | : | |
| 301 Larchmont Boulevard | : | |
| Mt Laurel, New Jersey 08054 | : | |
| and | : | |
| KIM BILLINGS (*individually*) | : | |
| and | : | |
| VICTORIA ASCUITTO (*individually*) | : | |
| and | : | |
| GEORGE JACKSON (*individually*) | : | |
| and | : | |
| MAIRA MEDINA (*individually*) | : | |
|  | : | |
| Defendants. | : | |

Plaintiff, Tammy Jordan, by and through undersigned counsel hereby files this Civil Action

Complaint against Defendants, Board of Education of Mount Laurel Township, Mount Laurel

Board of Education, Larchmont Elementary School, Mount Laurel Schools, Kim Billings

(*individually*) Victoria Ascuitto (*individually*), George Jackson (*individually*), Maira Medina

[1]

(*individually*) (collectively and hereinafter "Defendants"), and upon information and belief avers the following:

## PARTIES

1.      Plaintiff, Tammy Jordan ("Ms. Jordan" or "Plaintiff") is an adult individual who resides in the Commonwealth of Pennsylvania at 106 Faith Court, Mount Laurel, NJ 08054.

2.      Defendant, Board of Education of Mount Laurel Township is an organization existing under the laws of the State of New Jersey which is licensed to and regularly transacts business in the State of New Jersey with an address for the purposes of service at 330 Mount Laurel Road, Mount Laurel, New Jersey 08054.

3.      Defendant, Mount Laurel Board of Education is an organization existing under the laws of the State of New Jersey which is licensed to and regularly transacts business in the State of New Jersey with an address for the purposes of service at 330 Mount Laurel Road, Mount Laurel, New Jersey 08054.

4.      Defendant, Larchmont Elementary School, is an organization existing under the laws of the State of New Jersey which is licensed to and regularly transacts business in the State of New Jersey with an address for the purposes of service at 301 Larchmont Boulevard, Mount Laurel, New Jersey 08054.

5.      Defendant, Larchmont Elementary School, is an organization existing under the laws of the State of New Jersey which is licensed to and regularly transacts business in the State of New Jersey with an address for the purposes of service at 301 Larchmont Boulevard, Mount Laurel, New Jersey 08054.

6.      Defendant, Mount Laurel Schools, is a business organization existing under the laws of the Commonwealth of Pennsylvania which is licensed to and regularly transacts business

[2]

in the Commonwealth of Pennsylvania with an address for the purposes of service at 6455 East Johns Crossing, Suite 425, Duluth, Georgia 30097.

7. Defendant, Kim Billings (*individually*) is an adult individual who resides in the State of New Jersey with a business address for the purposes of service at 330 Mount Laurel Road, Mount Laurel, New Jersey 08054.

8. Defendant, Victoria Ascuitto (*individually*) is an adult individual who resides in the State of New Jersey with a business address for the purposes of service at 330 Mount Laurel Road, Mount Laurel, New Jersey 08054.

9. Defendant, George Jackson (*individually*) is an adult individual who resides in the State of New Jersey with a business address for the purposes of service at 330 Mount Laurel Road, Mount Laurel, New Jersey 08054.

10. Defendant, Maira Medina (*individually*) is an adult individual who resides in the State of New Jersey with a business address for the purposes of service at 330 Mount Laurel Road, Mount Laurel, New Jersey 08054.

11. At all times relevant to this Civil Action Defendant, Kim Billings, Victoria Ascuitto, George Jackson Maira Medina held supervisory authority over Plaintiff, Tammy Jordan.

12. At all times relevant to this Civil Action, Defendants was Plaintiff's joint and sole employer.

13. At all times material to this Charge, Defendant George Jackson was the Principle of Larchmont Elementary School and held supervisory authority over Plaintiff, Tammy Jordan .

## NATURE OF THE CASE

14.    Plaintiff complains pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 20003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), 42 U.S.C. § 1981; and to remedy violations of the New Jersey Law Against Discrimination ("NJLAD"); and seeks damages to redress injuries Plaintiff suffered as a result of Defendants' discrimination based on race, color, and national origin and in retaliation for Plaintiff's opposing and reporting such discrimination.

### JURISDICTION AND VENUE

15.    This action involves a Question of Federal Law under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964.

16.    The honorable Court also has supplemental jurisdiction over the New Jersey State Law causes of action.

17.    Venue is proper in this district based upon Defendants' principal place of business within Burlington County in the State of New Jersey, within the District of New Jersey, Additionally, the events that give rise to Plaintiff's claim took place within Burlington County in the State of New Jersey, within the District of New Jersey.

18.    On or about November 20, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein. Plaintiff requested that her Charge of Discrimination be dual filed with the New Jersey Division on Civil Rights.

19.    The EEOC issued a Dismissal and Notice of Rights on February 28, 2019.  Plaintiff hereby files the instant Civil Action Complaint within ninety (90) of the Dismissal and Notice of Rights.

[4]

20.     Venue is proper in the District of New Jersey as this matter involves questions under federal law pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964.

## MATERIAL FACTS

21.     Plaintiff, Tammy Jordan began her employment for Defendants on September 1, 2016.  Ms. Jordan was hired as a full-time second grade elementary school teacher and continued her employment for Defendants until her unlawful termination by constructive discharge on June 30, 2018.  Plaintiff, Tammy Jordan's working conditions were so onerous, abusive, and hostile that no reasonable person is Plaintiff's shoes would have been expected to continue her employment and such that Plaintiff's decision to discontinue her employment was void of free will.

22.     At the time of her unlawful termination there were no issues concerning the quality of Ms. Jordan's job performance.  Ms. Jordan never received a verbal or written warning for discipline or any other reason during her employment for Defendants.  In fact, throughout Mr. Jordan's entire teaching career, Plaintiff, Tammy Jordan received no written or verbal warning concerning discipline or the quality of Ms. Jordan's job performance.  Plaintiff, Tammy Jordan was an excellent teacher who was subjected to severe and pervasive discrimination and harassment by the white, Caucasian teaching staff at Larchmont Elementary School.

23.     Plaintiff, Tammy Jordan  received evaluations of her job performance categorizing Ms. Jordan's performance as accomplished.  Ms. Jordan  has never received an evaluation below satisfactory.

24.     In order for Plaintiff Tammy Jordan  to receive the position of Second Grade Classroom teacher at Larchmont Elementary School, she had to pass a rigorous interview process.  This process consisted of meeting with a committee, meeting with the principle, Defendant, George Jackson, meeting with the curriculum supervisor, and meeting with the Super

Intendant, George J. Rafferty.  Despite the rigorous interview process and Plaintiff, Tammy Jordan's experience and qualifications, the white, Caucasian teaching staff at Larchmont Elementary School accused Plaintiff, Tammy Jordan  of only receiving the position due to affirmative action.

25.     Plaintiff, Tammy Jordan  was accused of only getting the job because she is a black.

26.     Plaintiff, Tammy Jordan  was accused of gaining her employment with Defendants without providing references.

27.     Upon beginning her employment at Larchmont Elementary School, Plaintiff, Tammy Jordan  was the only black, African American second grade classroom teacher at Larchmont Elementary School.  Ms. Jordan  was the first African American classroom teacher hired at Larchmont Elementary School since 1990.  Defendants replaced Plaintiff, Tammy Jordan with a white, Caucasian individual.  Defendants have avoided hiring black, African American teachers due to the discrimination and harassment to which black, African American teachers are subjected at Larchmont Elementary School.  Accordingly, there are almost no black, African American teachers at Larchmont Elementary School.

28.     From the onset of her employment at Larchmont Elementary School, Plaintiff, Tammy Jordan  was subjected to severe and pervasive discrimination and harassment in the workplace.

29.     From the beginning of Plaintiff, Tammy Jordan's first year at Larchmont Elementary School, Ms. Jordan  noted the difference in the way Defendants treated two other new white schoolteachers.  The two new white, Caucasian schoolteachers received assistance and support from Defendants.  They were made aware of all events, while Defendants actively excluded Ms. Jordan  by refusing to talk with her, and refusing to keep Ms. Jordan  informed.

This included Kim Billings and Maira Medina who were Ms. Jordan's white, Caucasian counterparts who taught in the second grade.

30.     Defendants executed a plan of segregation in an attempt to signal out and exclude Plaintiff, Tammy Jordan  from becoming a member of the Second-Grade team.

31.     Defendants, Kim Billings, Maira Medina, and Victoria Ascuitto refused to even acknowledge Ms. Jordan , even when Ms. Jordan  attempted to speak with them.

32.     Defendants, Kim Billings, Maira Medina, and Victoria Ascuitto's discrimination and harassment of Ms. Jordan  created a hostile work environment for Plaintiff, Tammy Jordan.

33.     Defendant, George Jackson is an African American male and acknowledged issues of systemic racism at Larchmont Elementary School.  Defendant, George Jackson informed Plaintiff, Tammy Jordan , "we have to be like Jackie Robinson."

34.     Plaintiff, Tammy Jordan  was subjected to offensive, discriminatory comments. Ms. Jordan  reported the discrimination and harassment to Defendant George Jackson, who was the Principal of Larchmont Elementary School.  Ms. Jordan reported the discrimination and harassment to Defendant, George Jackson early on in the first year of Plaintiff, employment with Defendants.  Defendant, George Jackson refused to take any corrective action pursuant to Plaintiff, Tammy Jordan's reports of discrimination and harassment in the workplace.  Instead of investigating Plaintiff, Tammy Jordan's reports of discrimination and harassment in the workplace, Defendant, George Jackson informed Plaintiff that she had to be like the movie "Hidden Figures."  Hidden Figures is a movie about three black African American women who worked at NASA during the 1960s.  Defendant, George Jackson informed Plaintiff, Tammy Jordan that Plaintiff Tammy Jordan working at Larchmont Elementary School was like the three-woman in Hidden Figures working at NASA in the 1960s.  The movie Hidden Figures depicts severe and pervasive discrimination against the women based on race, color and national origin.

[7]

The three black, African American women are denied promotions, employment opportunity, are called niggers, and were forced to work in a segregated environment where they were not allowed to use white facilities including bathrooms and water fountains.  Instead of initiating prompt remedial measures in response to Plaintiff, Tammy Jordan's reports of discrimination and harassment in the workplace, Defendant, George Jackson told Plaintiff, Tammy Jordan to be like the woman in "Hidden Figures" and to put up with the discrimination and harassment because "they (Plaintiff's white Caucasian coworkers) don't know what they are doing." Defendant, George told Plaintiff, Tammy Jordan to "be like Jackie Robinson."  Accordingly, Defendant, George Jackson sanctioned, condoned, allowed, and permitted, the discrimination and harassment to continue.

35.     Despite the acknowledged systemic racism, discrimination and harassment against African American teachers by white Caucasian teachers at Larchmont Elementary School, Defendant, George Jackson defended the white Caucasian teachers saying, "they don't know what they are doing," and "they don't know what they are saying."  Defendant, George Jackson concluded, "they don't mean nothing by it."

36.     Plaintiff reported discrimination and harassment to Defendant, George Jackson on numerous occasions.  Defendant, George Jackson acknowledged that there was racism, discrimination and harassment at Larchmont Elementary School, but failed to initiate prompt remedial measures.  Defendant, George Jackson refused to investigate Plaintiff, Tammy Jordan's reports of discrimination and harassment in the workplace.  Defendant, George Jackson did not escalate Plaintiff, Tammy Jordan's reports of discrimination and harassment in the workplace. Defendant, George Jackson did nothing with Plaintiff, Tammy Jordan's reports of discrimination and in effort to actively conceal the fact that Plaintiff, Tammy Jordan was making such reports.

Accordingly, Defendant, George Jackson sanctioned, condoned, allowed, and permitted, the discrimination and harassment to continue.

37.     Defendant, Kim Billings and Defendant, Victoria Ascuitto often spoke to Plaintiff, Tammy Jordan  as if Defendants believed that they were more intelligent than Plaintiff, Tammy Jordan .

38.     Defendant, Kim Billings often indicated that she believed that Plaintiff, Tammy Jordan  had an inferior intellect because of her color and race.  Defendant, Kim Billings often made condescending remarks to Plaintiff, Tammy Jordan  such as, "I would show you my lesson plans, but you won't understand them anyway."

39.     Defendant, Victoria Ascuitto often made condescending remarks to Plaintiff, Tammy Jordan  such as, "did what I just say confuse you?"

40.     Defendant, Victoria Ascuitto often made condescending remarks to Plaintiff, Tammy Jordan  such as, "can you even understand me?"

41.     Defendant, Victoria Ascuitto often made condescending remarks to Plaintiff, Tammy Jordan  such as, "are you confused by what I just said?"

42.     Defendants often made abusive, discriminatory and disparaging remarks to Plaintiff, Tammy Jordan .  Examples include but are not limited to:

- "You won't understand me anyway."

- "I would never want them to do me like they do you."

- "I am having a really hard time understanding you."

- "I cannot be hiring a bunch of black people."

- "Do your grand-children have the same mother?"

43.     At a staff meetings for Professional Learning Communities, Plaintiff entered the meeting and took a seat at the table with the rest of the Second Grade Classroom teachers, a

group of white, Caucasian individuals.  Everyone got up and moved to another table leaving

Plaintiff, Tammy Jordan  alone at the table.  This was not the only time Ms. Jordan's white,

Caucasian counterparts refused to sit with her, and/or moved to another table to avoid sitting

with a black African American teacher.  Defendants actively initiated an ongoing policy of

segregation to exclude Plaintiff, Tammy Jordan from activities that the white, Caucasian teachers

were involved in.

44.     On one occasion, when Plaintiff, Tammy Jordan's white, Caucasian co-workers

moved to another table after Ms. Jordan  sat down with them, a white woman named, Katherine

Ruoff who did not get up and move said, "are you really going to leave me here by myself?"  At

no time was Katherine Ruoff alone as Plaintiff, Tammy Jordan  had just sat down.

45.     On December 15, 2016, Defendant, George Jackson noticed the white, Caucasian

Second Grade teachers discriminatory conduct to which Ms. Jordan  was subjected.  Defendant,

George Jackson informed Ms. Jordan , "off the record, I see what you are talking about."

Plaintiff had previously reported this discrimination and harassment to Defendant, George

Jackson.  Even after Defendant, George Jackson witnessed the discrimination and harassment of

Plaintiff, Tammy Jordan first-hand, he still refused to initiate prompt remedial measures.

Accordingly, Defendant, George Jackson sanctioned, condoned, allowed, and permitted, the

discrimination and harassment to continue.

46.     On January 3, 2017 Defendant, George Jackson entered Plaintiff, Tammy

Jordan's classroom.  During the ensuing conversation Ms. Jordan  once again expressed her

grave concerns for the segregated atmosphere, along with the discriminatory and harassing

comments.  Defendant, George Jackson informed Ms. Jordan , "I hired you because you were the

most experienced.   Defendant, George Jackson said that he was about to hire another teacher,

who was Ms. Melonie Gaskins, but that "I can't hiring a bunch of black people at once."

[10]

Defendant, George Jackson's comment that he could not hire a bunch of black people at once was based on the severe and pervasive discrimination and harassment to which black, African American teachers were subjected during their employment for Defendants.  This was also based on the white, Caucasia employees discrimination of black, African American teachers.

47.     Melanie Gaskins ("Ms. Gaskins"), an African American, female was hired in 2017.  Prior to Ms. Gaskin's beginning her employment at Larchmont Elementary School, Defendant, George Jackson held a meeting on January 26, 2017 to announce Ms. Gaskins hire. Defendant, George Jackson informed everyone present at the January 26, 2017 meeting, including Plaintiff, Tammy Jordan , that he was scared to hire Ms. Gaskins because Ms. Gaskins is black.  Defendant, George Jackson started crying, stating that he was afraid to hire another black teacher. He said that hiring the new black teacher was very controversial.

48.     During the January 26, 2017 meeting, Defendant, George Jackson stated that one year in Mount Laurel School District "is not a bad thing to have on your resume."  This was the second time that Defendant, George Jackson made this statement in Ms. Jordan's presence.  Ms. Jordan  felt targeted by this statement because she was the only teacher in the room for whom it was possible to have a one-year tenure at Mount Laurel School District.

49.     At the same meeting Defendants, Maira Medina and Kim Billings asked Defendant, George Jackson why he would hire Ms. Gaskins instead of Victoria Ascuitto, a white, Caucasian substitute teacher at Larchmont Elementary School.  Other Second Grade teachers expressed their resentments that Defendant, Victoria Ascuitto was not hired and continued to question Defendant, George Jackson about the decision to hire another African American teacher.

50.     Plaintiff, Tammy Jordan  met with Defendant, George Jackson sometime around the beginning of 2017 to discuss, among other things, the rumor that Plaintiff, Tammy Jordan

received her employment for Defendants by way of affirmative action.  Plaintiff, Tammy Jordan

also discussed with Defendant, George Jackson the accusation that Plaintiff did not have to

provide references in order to gain employment for Defendants.  No investigation was performed

and no corrective action was taken.  Accordingly, Defendant, George Jackson sanctioned,

condoned, allowed, and permitted, the discrimination and harassment to continue.

     51.    February 17, 2017, the new African American Second Grade teacher, Melanie

Gaskins, visited Plaintiff, Tammy Jordan's classroom.  During this visit, Melanie Gaskins

mentioned that a group of parents protested her getting hired because of her race and color, and

that her first few days were "very rough."  Ms. Gaskins also stated that she heard things about

the discrimination and harassment at Larchmont Elementary School before she came to

Larchmont Elementary School.  Ms. Gaskins stated that Defendant, George Jackson informed

her that she "may not be welcome at this school."

     52.    In February 2017, Defendant, Maira Medina stated, "we don't have time in the

curriculum to teach about Black History."  This was a curious comment as Defendant, Maira

Medina's supported spending a week teaching students about the fictional author, Dr. Seuss.

     53.    Plaintiff, Tammy Jordan  reported this color and race-based comment to

Defendant, George Jackson.  Defendant, George Jackson replied, "they are not ready for all of

that yet."  No investigation was performed.  No corrective action was taken.  Accordingly,

Defendant, George Jackson sanctioned, condoned, allowed, and permitted, the discrimination

and harassment to continue.

     54.    Pursuant to reports of discrimination and harassment in the workplace, Defendant,

George Jackson accused Plaintiff, Tammy Jordan  of thinking too much with the emotional part

of Ms. Jordan's brain.  This was part of Defendants strategy or refusing to initiate prompt

remedial measures.  Defendants blamed the individual making the report of discrimination and

harassment in the workplace and refused to investigate, take statements, consider the reports and initiate corrective measures.

55.     Plaintiff, Tammy Jordan  was segregated from the rest of the white, Caucasian Second Grade classroom teachers who refused to acknowledge Plaintiff, Tammy Jordan . The white, Caucasian employees and second grade teachers would not even talk with Plaintiff, Tammy Jordan.  The white Caucasian second grade teachers actively excluded Plaintiff, Tammy Jordan from group efforts in a strategy of segregation, discrimination and harassment.  This occurred every day.

56.     The Second Grade Classroom teachers at Larchmont Elementary School shared certain documents on Google Docs.  For example, there was a document for reserving equipment such as laptops and television monitors.  The Second Grade Classroom teachers could reserve this equipment by indicating on a Google Docs file created for this purpose.  Plaintiff, Tammy Jordan's name was frequently removed from the list denying Ms. Jordan  and her students access to equipment.

57.     On November 8, 2016, Defendant, Maira Medina aggressively entered, Ms. Jordan's classroom and accused Ms. Jordan  of using the laptops when Ms. Jordan  was not supposed to be using them.  Ms. Jordan  politely informed Defendant, Maira Medina that the Google Docs did not indicate what Defendant, Maira Medina was representing.  Defendant, Maira Medina left and returned shortly thereafter with her laptop and aggressively marched across the room and confronted Ms. Jordan  in front of Ms. Jordan's entire Second Grade class. Defendant, Maira Medina pointed to the computer screen and yelled "See, I am signed up for the laptops!"  The entire class, including Ms. Jordan  stared at Defendant, Maira Medina marched out of the room.

[13]

58.     Ms. Jordan  noticed that her name kept disappearing from the shared Google Docs file created to reserve equipment for classroom use.  Ms. Jordan  began video recording herself signing up for equipment, and taking pictures of her computer screen to prove that she was indeed signing up to use equipment.  Ms. Jordan  later discovered that Defendants were erasing her name.  A simple search of the Google Docs history indicated that Defendants, Victoria Ascuitto and Kim Billings names were entered after Ms. Jordan's was erased.

59.     On November 14, 2016, Defendant, George Jackson entered Ms. Jordan's classroom before school to inform Ms. Jordan that he had failed to put Ms. Jordan  in a position to achieve success.  Defendant, George Jackson informed Ms. Jordan  that he had Ms. Jordan's back.  Defendant, George Jackson cried about the way Ms. Jordan  was being treated, however, no investigation was performed and no corrective action was taken.  Accordingly, Defendant, George Jackson sanctioned, condoned, allowed, and permitted, the discrimination and harassment to continue.

60.     November 15, 2016, Plaintiff, Tammy Jordan  informed Defendant, George Jackson about the discriminatory, condescending remark that Defendant, Kim Billings made to Ms. Jordan  about not having the ability to understand Defendant, Kim Billing's lesson plans.

61.     On another occasion, there was a signup sheet for mock elections.  Someone signed Plaintiff, Tammy Jordan's name to this sheet without informing Ms. Jordan  in an effort to discredit Ms. Jordan.

62.     Plaintiff, Tammy Jordan's employment for Defendants was a daily fight for the opportunity to perform the duties of her employment like Plaintiff, Tammy Jordan's similarly situated white, Caucasian coworkers.  Every day that Plaintiff, Tammy Jordan worked, she experienced discrimination and harassment from her white, Caucasian coworkers.

63.    Plaintiff, Tammy Jordan  stopped leaving her classroom as every time she left her classroom, Plaintiff, Tammy Jordan was subjected to abusive and hostile treatment. Accordingly, Plaintiff was subjected to s hostile work environment.

64.    Around June 2017, Plaintiff, Tammy Jordan  reported the discrimination and harassment to the Mount Laurel Education Association, which is the teachers' union.  Pursuant to reporting discrimination and harassment in the workplace, Defendants retaliated against Ms. Jordan.

65.    Plaintiff, Tammy Jordan  also reported the discrimination and harassment to the Affirmative Action Officer and Assistant Superintendent, Dr. Sharon Vitella.  Ms. Jordan  also reported discrimination and harassment at the Mount Laurel Education Association.

66.    Plaintiff, Tammy Jordan  also continued reporting the discrimination and harassment to Defendant, George Jackson.  Pursuant to Ms. Jordan's complaints to the union, the Assistant Superintendent, and Defendant George Jackson, Defendant, George Jackson ordered Plaintiff, Tammy Jordan  into his office for a meeting.

67.    Defendant, George Jackson had already met with the other Second Grade Classroom teachers: Defendant, Kim Billings and Defendant, Maira Medina.  Instead of taking prompt remedial measures to ameliorate the discrimination and harassment to which Ms. Jordan was subjected, Defendant, George Jackson informed Plaintiff, Tammy Jordan  that she was no longer going to be a Second Grade Classroom teacher.  This decision was made in an effort to segregate Plaintiff, Tammy Jordan from the white, Caucasian second grade teachers who did not want to work with a black, African American teacher.  Defendant, George Jackson informed the white, Caucasian second grade teachers that Plaintiff, Tammy Jordan was going to be removed from her second grade classroom before Plaintiff was informed.

[15]

68.     Pursuant to Plaintiff, Tammy Jordan's reports of discrimination and harassment in the workplace, Ms. Jordan was moved from her position as a Second Grade Classroom teacher to a position as a First Grade Classroom teacher.

69.     For the school year beginning September 2017 and ending June 2018, Plaintiff, Tammy Jordan was reassigned to the First Grade. When Ms. Jordan received her list of students, it was apparent that Ms. Jordan's first grade class was stacked. Defendants intentionally assigned students with academic and behavior problems to Plaintiff, Tammy Jordan's class. Ms. Jordan's class had a number of students with academic and behavior issues that was disproportionate to the number in other First Grade classes.

70.     Defendant, George Jackson informed Plaintiff, Tammy Jordan that he was afraid to put African American students in the white Caucasian teachers' classes, because the same way that the white Caucasian teachers spoke to Plaintiff, is the same way that the white Caucasian teachers to African American students' parents. Therefore, Defendant, George Jackson admittedly attempted to hide the fact that white, Caucasian teachers subjected black, African American students and black African American students' parents to discrimination and harassment by assigning black, African American students to Plaintiff, Tammy Jordan's class.

71.     Defendant, George Jackson informed Plaintiff, Tammy Jordan , "the way I was raised, white is always right."

72.     After Plaintiff, Tammy Jordan was moved from the Second-Grade class to the First Grade Class, Defendant, George Jackson and Plaintiff, Tammy Jordan discussed Ms. Jordan's replacement who took over for Ms. Jordan as a Second Grade Classroom teacher. Referring to Ms. Jordan's replacement, Defendant, George Jackson stated, "I can't believe they would rather have that mess than you." This comment clearly indicated that the white Caucasian Second Grade teachers including Defendants, Maira Medina and Kim Billings lobbied to have

[16]

Plaintiff, Tammy Jordan  replaced with a white Caucasian teacher.  This statement always

indicated the actual reason why Plaintiff, Tammy Jordan was moved from the second-grade class

to the first grade.  Plaintiff, Tammy Jordan was moved as part of the white, Caucasian second

grade teachers' objective to remove the only black, African American teacher from the second-

grade team.  This was part of the second-grade teachers' objective of segregation.

73.     Defendant, George Jackson has a bookshelf which includes a collection of books

where the subject matter is black history and African American heroes.  Defendant, George

Jackson informed Ms. Jordan  that the reason he kept "black books" turned so that it was more

difficult to see them, was because Defendant, George Jackson's white Caucasian staff, "is not

ready for that yet."

74.     It was common for the parents of black, African American students to complain

about the racist white Caucasian teachers who worked at Larchmont Elementary School.  It was

common for the parents of black, African American students to complain about the racist white

Caucasian employees who worked in the office of Larchmont Elementary School.

75.     Plaintiff's Tammy Jordan's classroom was referred to as the "boiler pot mix."

76.     Plaintiff, Tammy Jordan's was repeatedly informed that there were "too many

behaviors in her classroom."  Ms. Jordan  was also notified by the specialists at Larchmont

Elementary School that she had the wrong mix of children placed in her classroom.

77.     Defendant, George Jackson assigned these students to Plaintiff, Tammy Jordan's

classroom in retaliation for Ms. Jordan's continued reports of discrimination and harassment in

the workplace the year prior.

78.     Pursuant to reporting discrimination and harassment in the workplace, Plaintiff,

Tammy Jordan  was moved from the Second Grade to the First Grade and assigned a class

comprised of students with behavior and academic issues.  In fact, Ms. Jordan  was the only

[17]

teacher with a class where five children required reading support from a specialist. Traditionally, Defendants attempted to spread children with behavior and academic issues among the various classes, thereby avoiding conditions precisely like those forced upon Ms. Jordan.  Plaintiff, Tammy Jordan's First-Grade class was a concentration of students with academic and behavior issues.  Plaintiff, Tammy Jordan was assigned this class as retaliation for reports of discrimination and harassment in the workplace the previous year.  Plaintiff Tammy Jordan was intentionally given a First-Grade class with a concentration of students with behavior and academic issues in order to harass and discrimination against Plaintiff due to Plaintiff's race, color and national origin and in retaliation for Plaintiff's opposing said discrimination and harassment in the workplace.

79.     Plaintiff Tammy Jordan  was assigned a classroom referred to as the "boiler pot mix" just days after she reported discrimination and harassment to the Assistant Superintendent, Dr. Vitella.

80.     Pursuant to Plaintiff, Tammy Jordan's reports to Dr. Vitella, Defendant, George Jackson's entire demeanor toward Plaintiff, Tammy Jordan  charged.  Plaintiff had previously reported discrimination and harassment and hostile work environment to Defendant, George Jackson on multiple occasions, however, Defendant, George Jackson actively concealed Plaintiff, Tammy Jordan's reports of discrimination and harassment in the workplace and refused to initiate positive corrective measures.  Pursuant to Plaintiff's reports of discrimination and harassment to Dr. Vitella, it was clear that Defendant, George Jackson was angry and resented Ms. Jordan's reports of discrimination and harassment to the Assistant Superintendent.

81.     October 24, 2017 Defendant, George Jackson approached Plaintiff, Tammy Jordan  and spoke about the issues related to Ms. Jordan's first grade class.  Ms. Jordan informed Defendant, George Jackson that she could not go through another year like the year

[18]

before.  Ms. Jordan was referring to the year of discrimination and harassment by Defendants during her time as a Second Grade Classroom teacher.  Defendant, George Jackson stated, "I can't be worried about that."

82.   Defendant, George Jackson then accused Ms. Jordan  of somehow responsible for the very discrimination and harassment to which she was subjected.  Defendant, George Jackson stated, "your holding on to stuff is getting in the way of us being able to move forward and progress."  Defendant, George Jackson failed to investigate and take prompt remedial measures and then, once again, blamed Plaintiff, Tammy Jordan for continuing to complaint that no effective remedial measures were taken.  Accordingly, Defendant, George Jackson sanctioned, condoned, allowed, and permitted, the discrimination and harassment to continue.

83.   Defendant, George Jackson asked Plaintiff, Tammy Jordan , "can you work with anybody?"

84.   Throughout the following school year, Plaintiff's co-workers continued their active strategy of exclusion and segregation of Plaintiff, Tammy Jordan.

85.   Plaintiff, Tammy Jordan continued to report the discrimination, harassment and retaliation to which Plaintiff was subjected.

86.   Plaintiff, Tammy Jordan  requested a transfer in an attempt to resolve the discrimination and harassment to which she was subjected.  At no time did Defendants seriously consider providing Ms. Jordan with a transfer.

87.   Plaintiff, Tammy Jordan  made the decision to leave her employment with Defendants at the end of the school year.  Plaintiff, Tammy Jordan was forced to work the remainder of the school year in order to maintain an employment history that would allow for future employment opportunities.  Also, pursuant to Ms. Jordan's contract, she was required to provide at least sixty (60) days' notice prior to resignation.

[19]

88.     Defendants constructively discharged Plaintiff by making her working conditions so onerous, abusive, and intolerable that no person in Ms. Jordan's shoes would have been expected to continue working under such conditions and such that Ms. Jordan's resignation was void of free will.

89.     Plaintiff was not afforded the same opportunities as other similarly situated non-African American teaches with regard to support, benefits and other amenities of employment.

90.     Plaintiff was treated differently than similarly situated non-African American employees. Defendants discriminated against Plaintiff base on her race, color and national origin. Defendant retaliated against Plaintiff for reporting said discrimination and harassment.

91.     As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

92.     As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

93.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails.

94.     Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

95.     Plaintiff has further experienced severe emotional and physical distress.

96.     As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

97.     Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

[20]

98.     Defendants at all times refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment and hostile work environment.

99.     Defendants discriminatory conduct was severe and pervasive, creating a hostile work environment for Plaintiff.

100.    The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

101.    Plaintiff claims a practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

102.    Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

**FIRST CAUSE OF ACTION**
**UNDER FEDERAL LAW**
**42 U.S.C. SECTION 1981**
**(against all named Defendants)**

103.    Plaintiff, Tammy Jordan, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-two (102) as fully as if they were set forth at length.

104.    42 U.S.C. Section 1981 states in relevant part as follows:

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

105.    Plaintiff, as a member of the Black and/or African American race, was

discriminated against by Defendants because of his race as provided under 42 U.S.C. Section 1981 and has suffered damages as set forth herein.

106.    Plaintiff also claims unlawful retaliation under 42 U.S.C. Section 1981 for his opposition to Defendants' unlawful employment practices.

**SECOND CAUSE OF ACTION**
**DISCRIMINATION UNDER TITLE VII**
**(against Corporate Defendants only)**

107.    Plaintiff, Tammy Jordan, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-six (106) as fully as if they were set forth at length.

108.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race, color, and national origin.

109.    SEC. 2000e-2. *[Section 703]* states as follows:

(a) Employer practices

It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

110.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his race, color, and national origin.

### THIRD CAUSE OF ACTION
### <u>RETALIATION UNDER TITLE VII</u>
### (against Corporate Defendants only)

111.     Plaintiff, Tammy Jordan, hereby incorporates all allegations contained in

paragraph one (1) through one-hundred-ten (110) as fully as if they were set forth at length.

112.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a)

provides that it shall be an unlawful employment practice for an employer: "(1) to… discriminate

against any of his employees… because [s]he has opposed any practice made an unlawful

employment practice by this subchapter, or because [s]he has made a charge, testifies, assisted,

or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

113.     Defendants engaged in unlawful employment practiced prohibited by 42 U.S.C. §

2000e *et seq*. by retaliating against Plaintiff with respect to the terms, conditions, and/or

privileges of his employment because of his opposition to and reporting of the unlawful

employment practices of Defendants.

### FOURTH CAUSE OF ACTION
### UNDER NEW JERSEY STATE LAW
### <u>DISCRIMINATION</u>

114.     Plaintiff, Tammy Jordan, hereby incorporates all allegations contained in paragraph

one (1) through one-hundred-thirteen (113) as fully as if they were set forth at length.

115.     New Jersey's Law against Discrimination Section 10:5-12(a) sets forth in pertinent

part as follows: " It shall be an unlawful employment practice, or, as the case may be, an unlawful

discrimination: a) For an employer, because of race . . , pregnancy, sex, disability . . to refuse to

hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations

other than age, from employment such individual or to discriminate against such individual in

compensation or in terms, conditions or privileges of employment."

[23]

116.     Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

117.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New Jersey's Law against Discrimination.

## SECOND CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## RETALIATION

118.     Plaintiff, Tammy Jordan, hereby incorporates all allegations contained in paragraph one (1) through one-hundred-seventeen (117) as fully as if they were set forth at length.

119.     New Jersey's Law against Discrimination Section 10:5-12(d) sets forth that it is unlawful "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

120.     Defendants violated this section as set forth herein.

## THIRD CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## AIDING AND ABETTING

121.     Plaintiff, Tammy Jordan, hereby incorporates all allegations contained in paragraph one (1) through one-hundred-twenty (120) as fully as if they were set forth at length.

122.     New Jersey's Law against Discrimination Section 10:5-12(e) sets forth in pertinent part as follows: "Unlawful employment practices, discrimination.   It shall be an unlawful

[24]

employment practice, or, as the case may be, an unlawful discrimination: e) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

123.    Defendants engaged in an unlawful discriminatory practice by aiding and abetting the discrimination against the Plaintiff as set forth herein.

124.    Defendants violated all other applicable sections of N.J. Stat. § 10:5-12(e) et. Seq.

125.    As such, Plaintiff has been damaged as set forth herein.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

By: _____

Samuel C. Wilson, Esquire
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
Email: samuel@dereksmithlaw.com

DATED: May 29, 2019

[25]